## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERESA ROSALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 05-11442 PBS |
| ) | |
| MANHATTAN ASSOCIATES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

### AFFIDAVIT OF HEIDSHA SHELDON

I, Heidsha Sheldon, under oath depose and state:

1. I am an attorney at the firm of Seyfarth Shaw LLP and counsel-of-record for the defendant, Manhattan Associates, Inc. ("Manhattan Associates"), in the above-captioned action pending in this Court.

2. I have filed with the Court today the accompanying Manhattan Associates, Inc.'s Motion for Summary Judgment, with supporting memorandum, and am filing this affidavit in accordance with L.R. 56.1 and Manhattan Associates' statement of the material facts of record at to which there is no genuine issued to be tried.

3. Attached hereto as Exhibit 1 is a true and accurate copy of the Complaint filed in this action by the Plaintiff.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 4th DAY OF AUGUST, 2005.

                                                       /s/ Heidsha Sheldon
                                                     Heidsha Sheldon

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT OF THE
TRIAL DEPARTMENT
CIVIL ACTION NO. 05-2123

TERESA ROSALES,
    Plaintiff

VS.

MANHATTAN ASSOCIATES, INC.
    Defendant

COMPLAINT AND
~~JURY CLAIM~~

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
JUN 1 7 2005
Edward J. Sullivan
CLERK

Now comes the plaintiff in the above-referenced matter and says as follows:

1. She is a resident of 42 Watson Road, Belmont, Massachusetts 02478.

2. Manhattan Associates, Inc., (hereinafter Manhattan) is a Georgia corporation having a regular place of business at One Burlington Plaza, Suite 272, at 67 South Bedford Street in Burlington, Massachusetts 02373.

3. By Order of this Court a Judgment was entered against the defendant Logistics.Com, Inc., in Civil Action No. 03-04886 on July 14, 2004. A copy of the Judgment and Findings of the Court is attached as Exhibit A.

4. An Execution issued on such Judgment on November 23, 2004. A copy of the Execution is attached as Exhibit B.

5. The defendant, Manhattan acquired Logistics.Com, Inc., and assumed certain of its obligations and liabilities by means of a purchase agreement dated December 13, 2002.

```
8121ED00006/17/05CIVIL      240.00
8121ED00006/17/05SUR CHARGE  15.00
8121ED00006/17/05SUMMONS     50.00
8121ED00006/17/05SECC        20.00
```

6. The litigation concluded against Logistics.Com, Inc., was one of the liabilities assumed by the defendant Manhattan under Section III Liabilities and Obligations of said agreement.

7. The plaintiff makes claim, therefore, against the defendant Manhattan Associates, Inc., as a Third-Party beneficiary of said agreement.

WHEREFORE, the plaintiff demands judgment against the defendant in the amount of the Execution attached as Exhibit B.

~~JURY CLAIM~~

~~THE PLAINTIFF DEMANDS TRIAL BY JURY.~~

Teresa Rosales
By her attorney,

*[signature]*
John F. Maher
BBO #314100
50 Pleasant Street
Arlington, MA  02476
Tel. No. (781) 641-4889

Date: June 16, 2005

EXHIBIT A



## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                                        SUPERIOR COURT
                                                     CIVIL ACTION
                                                     NO. 03-04886-J

TERESA ROSALES,         )
       Plaintiff        )
V.                      )        **FINDINGS OF THE COURT**
                        )
LOGISTICS.COM, INC.,    )
       Defendant        )

The Court having heard evidence and the testimony of witnesses hereby makes the following findings:

1. Teresa Rosales relying upon an offer of employment from the defendant terminated her employment with her former employer on February 4, 2002. Her date of employment with the defendant was to be February 19, 2002.

2. The defendant rescinded this offer on February 13, 2002.

3. Despite repeated attempts to find new employment the plaintiff, Teresa Rosales has been unable to do so.

4. Her salary at the defendant was to be $108,333.42.

5. She was to receive an annual bonus of $12,120.00.

6. Her annual compensation, therefore, was to be $120,453.42.

7. Her per diem, therefore, was to be $330.00.

8. There have been 876 days that have elapsed from the date she was to start employment, February 19, 2002 until today July 14, 2004.

2

9.  Her damages before interest is, therefore, $289,080.00.

10.  ~~Interest at the rate of 12 % per annum added to this amount is $62,324.~~

11.  ~~The total damages, therefore, due the plaintiff is $351,404.~~

It is so ordered.

By the Court,

*[signature]*
Locke, J.
Presiding

7/

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
CIVIL ACTION
NO. 03-04886-J

TERESA ROSALES,       )
    Plaintiff            )
V.                    )    **JUDGMENT**
                      )
LOGISTICS.COM, INC.,  )
    Defendant            )

This action came on for hearing before the Court, Locke, J. presiding, and the issues having been duly heard and findings having been duly rendered,

**IT IS ORDERED AND ADJUDGED**

That the plaintiff, Teresa Rosales, recover of the defendant, Logistics.com, Inc., the sum of $289,080.00 with interest thereon at the rate provided by law and shall take the costs of this action.

Dated at Cambridge, Massachusetts, this 14th day of July, 2004.

By the Court,

Associate Justice

**EXHIBIT B**

## Commonwealth of Massachusetts
### County of Middlesex
### The Superior Court

CIVIL DOCKET# **MICV2003-04886**

Teresa Rosales v Logistics,Com, Inc.

TO:John F Maher, Esquire
   Counsel for theTown of Arlington
   50 Pleasant Street
   Arlington, MA 02474

---

### NOTICE: EXECUTION ISSUED

This is to notify you that on 11/23/2004 an Execution has issued in the above entitled action. Original Execution enclosed.

Dated at Cambridge, Massachusetts this 23rd day of November, 2004.

Edward J. Sullivan,
Clerk of the Courts

BY:

James Lynch
Assistant Clerk

Telephone: 617-494-4010 EXT 4274

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court
### EXECUTION

CIVIL DOCKET# MICV2003-04886

Teresa Rosales v Logistics,Com, Inc.

To the Sheriffs of our Several Counties or their Deputies, GREETING:

WHEREAS Teresa Rosales, a resident in Belmont, in the County of Middlesex by the consideration of our Justices of our Superior Court at Middlesex, aforesaid, on 19th day of July 2004 recovered Judgment against Logistics,Com, Inc., a Delaware corporation with a regular place of business in Burlington, in the County of Middlesex for the sum of Three Hundred Eleven Thousand Thirty Four Dollars and Forty Three Cents debt or damages and Three Hundred Sixty Four Dollars and Twenty Two Cents costs of suit, as to us appears of record, where execution remains to be done:

| | |
|---|---:|
| DAMAGES: | $311,034.43 |
| COSTS: | $364.22 |
| POST JUD/INT: | $13,002.07 |
| TOTAL: | $324,400.72 |

**We command you** therefore, that of the goods, chattels or land of the said judgment debtor within your precinct, you cause to be paid and satisfied unto the said judgment creditor, at the value thereof in money, with interest thereon in the sum of **Thirteen Thousand Two Dollars and Seven Cents** from day of the rendition of said Judgment to date of execution the aforesaid sums, being **$324,400.72** in the whole, and thereof also to satisfy yourself for your own fees.

Hereof fail not, and make return of this writ with your doing thereon into the Clerk's office of said Court at Cambridge, within our County of Middlesex, and to make return of this writ within twenty years after the date of the said judgment, or within ten days after this writ has been satisfied or discharged.

**Witness, Barbara J. Rouse**, Esquire, Chief Justice of the Superior Court, at Cambridge, Massachusetts this 23rd day of November, 2004.

_____
Deputy Assistant Clerk

RETURN TO:
John F Maher, Esquire
Counsel for the Town of Arlington
50 Pleasant Street
Arlington, MA 02474

*logistics.com*

## TERMS OF EMPLOYMENT

As a condition of my employment with Logistics.com, Inc., its subsidiaries, affiliates, successors or assigns (together, the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I _____ agree to the following:

1. **At-Will Employment.** I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice.

2. **Confidential Information.**

    (a) **Company Information.** I agree at all times during the term of my employment and at all times thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to fulfill my employment obligations, or to disclose to any person, firm or corporation without written authorization of the President of the Company, any Confidential Information of the Company. I understand that "Confidential Information" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment and including specific contact names within customers' organizations), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

    (b) **Anti-trust Limitations.** I agree to avoid discussing any CONFIDENTIAL INFORMATION with competitors of the COMPANY or their employees or agents. This includes, but is not limited to, discussions regarding the COMPANY'S customers, pricing and policies. I recognize that any such discussions may cause the COMPANY, and me personally, to have violated federal and/or state anti-trust laws, including the Sherman and Clayton Acts. Sanctions of up to three (3) years imprisonment and fines of up to $100,000 have been imposed on individuals who violate such laws.

    (c) **Third Party Information.** I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with the third party.

(d) **Prior Information**. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company.

3. **Intellectual Property.**

(a) **Intellectual Property Retained and Licensed**. Except as set forth in a schedule attached hereto, there are no inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as " Prior Intellectual Property"), which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder. If in the course of my employment with the Company, I incorporate into a Company product, process, or machine any Prior Intellectual Property owned by me or in which I have an interest, whether or not it has been included on any schedule to this Agreement, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use, sell, or license such Prior Intellectual Property as part of or in connection with such product, process, or machine.

(b) **Assignment of Intellectual Property**. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign and shall assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements or trade secrets, whether or not capable of being patented or registered under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company or within twelve (12) months thereafter which relate in any manner to the business, products, and research and development of the Company or are produced or created using the Company's resources (collectively referred to as "Intellectual Property"). I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protected by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I shall not incorporate any invention, original work of authorship, development, concept, improvement, or trade secret owned, in whole or in part, by any third party, into any Intellectual Property without the Company's permission.

(c) **Intellectual Property Assigned to the United States**. I agree to assign to the United States government all my right, title, and interest in and to any and all Intellectual Property whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d) **Maintenance of Records**. I agree to keep and maintain notes, sketches, drawings, and any other forms of documentation regarding Intellectual Property as may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e) **Patent and Copyright Registrations**. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Intellectual Property and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Intellectual

2

Property, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Intellectual Property or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

4. **Conflicting Employment**. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company. I also agree that I will not be employed by or provide services as an independent contractor to other companies without the prior permission of the Company.

5. **Returning Company Documents and Other Property**. I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns.

6. **Notification of New Employer**. In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

7. **Solicitation of Employees**. I agree that for a period of twenty four months (24) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity, or provide information to a third party who may directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees.

8. **Noncompetition**. I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I will not: (1) contact any then current Company customers, or any customer to whom Company has provided a proposal for services, for the purpose of providing to them products or services similar to those provided by Company, nor (2) engage directly or indirectly as an employee, agent, principal, consultant or otherwise in the business of providing transportation or logistics decision support or management software, systems or related services, creating or operating transportation exchanges or similar electronic marketplaces or such other business activities in which the Company may be engaged or have proposed to be engaged when my employment at the Company is terminated, in the continental United States or in such other countries where the Company is then conducting such business. I acknowledge the reasonableness of this restriction in light of the value of the relationship between the Company and its customers, and the position of trust and confidence in which the Company has placed me in

3

regard to its Confidential Information, its customer' relationships and the development of its business.

If the scope of any of the restrictions set forth above is too broad to permit enforcement of the restriction to its full extent, then the restriction shall be enforced to the maximum extent permitted by law, and I agree that such scope may be judicially modified accordingly in any proceeding brought to enforce such restriction. I agree that if I am unable to obtain employment consistent with my abilities and education solely because of this non-competition provision, I shall promptly notify the Company and the Company shall have the option of waiving the requirements of this provision.

9. **Right to Seek Injunctive Relief.** I agree that any breach of any of the covenants contained in Sections 2, 3, 7 or 8 constitutes substantial and irreparable harm to the Company, and that such harm could not be adequately compensated by the Company's recovery of monetary damages. Therefore, I agree that the Company may seek injunctive relief, or any other relief which it deems necessary and appropriate, in the sole and exclusive judicial forum designated below in Section 10, in order to protect its rights under this Agreement and other common law rights, and that such injunctive proceeding shall not limit or in any way restrain the Company from seeking any other relief or damages.

10. **Arbitration**

(a) Except as provided in Section 10(c) below, the Company and I agree that any dispute or controversy arising out of, relating to, or in connection with this Agreement, or the interpretation, validity, construction, performance, breach, or termination thereof and all matters arising under any Federal, state or local statute, rule or regulation or principle of contract law or common law, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq., the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 et seq., the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq., the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §2601, et seq., the Massachusetts Fair Employment Practices Act, M.G.L. c.151B and the Massachusetts Equal Rights Act, M.G.L. c.214 §102., will be settled by binding arbitration unless otherwise required by law, to be held in Middlesex County, Massachusetts in accordance with the National Rules for the Resolution of Employment Disputes then in effect of the American Arbitration Association (the "Rules"). The arbitrator may grant injunctions or other relief in the dispute or controversy. The decision of the arbitrator will be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction.

(b) The arbitrator(s) shall apply the law of Massachusetts to the merits of any dispute or claim, without reference to rules of conflicts of law. I hereby consent to the personal jurisdiction of the state and federal courts located in Massachusetts for any action or proceeding arising from, or relating to, this Agreement or relating to any arbitration in which the parties are participants.

(c) The parties may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief, as necessary, without breach of this arbitration agreement and without abridgement of the powers of the arbitrator.

(d) I understand that nothing in this Section 10 modifies my at-will status. Either the Company or I can terminate the employment relationship at any time, with or without cause.

(e) I HAVE READ AND UNDERSTAND THIS SECTION 10, WHICH DISCUSSES ARBITRATION. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT, I AGREE, EXCEPT AS PROVIDED IN SECTION 10(c), TO SUBMIT ANY CLAIMS ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT, OR ITS INTERPRETATION, VALIDITY, CONSTRUCTION, PERFORMANCE, BREACH OR TERMINATION TO BINDING ARBITRATION, UNLESS OTHERWISE REQUIRED BY LAW, AND THAT THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF MY RIGHT TO A JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF MY RELATIONSHIP WITH THE COMPANY

11. **General Provisions.**

(a) **Governing Law; Severability.** This Agreement will be governed by the internal substantive laws, but not the choice of law rules, of the Commonwealth of Massachusetts. If one or more of the provisions in this Agreement is deemed void by law, then the remaining provisions will continue in full force and effect.

(b) **Entire Agreement, Successors and Assigns.** This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. Neither any modification of nor amendment to this Agreement, nor any waiver of any rights under this Agreement will be effective against any party unless in writing signed by that party. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

(c) **Enforceability.** If any provision of this Agreement is held by an arbitrator or court of competent jurisdiction to be unenforceable, the remainder of this Agreement shall remain in full force and effect and shall in no way be impaired.

(d) **Resignation of Employee.** I agree to give the company written notice of my decision to resign employment with the Company no less than two (2) weeks prior to my proposed effective termination date. The notice shall be in writing and sent by certified mail or hand-delivered to the headquarters of the company. The Company reserves the right to accelerate the notice period, in its sole discretion.

**EMPLOYEE**

_____
Signature

_____
Print Name

**ACCEPTED:**
**LOGISTICS.COM, INC.**

By:_____

Name:_____

Title:_____