UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERESA ROSALES,<br>    Plaintiff | )<br>)<br>) |
| VS. | )   CIVIL ACTION NO. 05-11441 PBS<br>) |
| MANHATTAN ASSOCIATES, INC.<br>    Defendant | )<br>) |

## AFFIDAVIT

I, John F. Maher, under oath depose and say as follows**:**

1.  I am an attorney and counsel of record for the plaintiff, Teresa Rosales, in the above-captioned action pending in this Court.

2.  I prepared and sent by certified mail, return receipt requested, a letter dated March 7, 2002 addressed to John Lanigan, Chief Executive Officer of Logistics.com, Inc., a copy of which is attached as Exhibit A**.**

3.  I received back the receipt showing the signature of an individual who, I believe upon information and belief, is an employee of Logistics.com, Inc., showing receipt of said letter on March 8, 2002.

4.  **I** had various conversations with counsel at Bingham McCutchen concerning this matter on various dates in 2002 before December 12, 2002. They led me to believe that they represented the interests of Logistics.com, Inc.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS THIRTY-FIRST DAY OF AUGUST, 2005.

/5/ John F. Maher
John F. Maher
BBO #314100
50 Pleasant Street
Arlington, MA 02476
Tel. (781) 641-4889
Fax. (781) *316-3159*

**EXHIBIT C**

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Middlesex, ss.

| | |
|---|---|
| TERESA ROSALES,    )   | |
|    Plaintiff    )   | |
|                             )   | COMPLAINT |
| vs.    )   | AND JURY CLAIM |
|                             )   | |
| LOGISTICS.COM, 1NC.,    )   | |
|    Defendant    )   | |

Now comes the plaintiff Teresa Rosales in the above captioned matter and says that:

(Parties)

1. She is a resident of 42 Watson Road, Belmont, in the County of Middlesex Commonwealth of Massachusetts.

2. The defendant Logistics.Com Inc. is a Delaware corporation with a regular place of business at 23 Third Avenue, in the Town of Burlington, County of Middlesex.

3. According to papers on file at the Office of the Secretary of State of the Commonwealth said defendant's resident agent is Laurence Peters, 38 Newbury Street, floor, Boston, Massachuseits 02116.

(Factual Allegations)

4. On January 28, 2002 the plaintiff received a formal written offer of employment from the defendant which she accepted by signing and returning to the defendant.

5. Relying on this offer and acceptance she terminated her employment with her then current employer on or about February 4, 2002.

6. On February 13, 2002 she received a phone call from personnel at the defendant rescinding the offer of employment. The rescission was confirmed by a letter dated February 13, 2002 which contained the following statement, "it is especially unfortunate that you terminated your employment with your previous employer, WebDialogs, in order to start employment with us on February 19, 2002. Please accept our apologies."

7. The plaintiff despite intensive search has been unable to secure successor employment.

Count I (Promissory Estoppel)

8. There was an unambiguous promise of employment communicated to the employee from the employer.
9. The plaintiff reasonably relied on the promise.
10. The reliance was expected and foreseeable by the employer.
11. The reliance was to the plaintiff's detriment.

Wherefore the plaintiff demands judgment against the defendant for the damages incurred by such reliance.

**PLAINTIFF CLAIMS** TRIAL **BY JURY**

Teresa Rosales
By her attorney,


John F. Maher
50 Pleasant Street
Arlington, MA 02476
781-641-4889
BBO# 314100

**EXHIBIT D**

COMMONWEALTH OF MASSSACHJSETTS

| | |
|---|---|
| MIDDLESEX, **SS** | SUPERIOR COURT<br>CIVIL ACTION<br>NO. 03-04886-J |

TERESA ROSALES,  )
    Plaintiff         )
V.                           )    **FINDINGS** OF THE COURT
                               )
LOGISTICS.COM, INC., )
    Defendant       )

The Court having heard evidence and the testimony of witnesses hereby makes the following findings:

1. Teresa Rosales relying upon an offer of employment from the defendant terminated her employment with her former employer on February 4, 2002. Her date of employment with the defendant was to be February 19, 2002.

2. The defendant rescinded this offer on February 13, 2002.

3. Despite repeated attempts to find new employment the plaintiff, Teresa Rosales has been unable to do so.

4. Her salary at the defendant was to be $108,333.42.

5. She was to receive an annual bonus of $12,120.00.

6. Her annual compensation, therefore, was to be $120,453.42.

7. Her per diem, therefore, was to be $330.00.

8. There have been 876 days that have elapsed from the date she was to start employment, February 19, 2002 until today July 14, 2004.

9. Her damages before interest is, therefore, $289,080.00.

X10. Interest at the rate of 12% per annum added to this amount is $62,324.

X11. The total damages, therefore, due the plaintiff is $351.404.

It is so ordered.

By the Court,

/s/ Jeffrey A. Locke
Presiding

EXHIBIT E

Commonwealth of Massachusetts
County of **Middlesex**
The **Superior** Court
EXECUTION

CIVIL DOCKET# MICV2003-04886

Teresa Rosales v Logistics,Com, Inc.

To the Sheriffs of our Several Counties or their Deputies, GREETING:

| | |
|---|---|
| DAMAGES: | $311,034.43 |
| COSTS: | $364.22 |
| POST JUD/INT: | $13,002.07 |
| TOTAL: | $324,400.72 |

WHEREAS Teresa Rosales, a resident in Belmont, in the County of Middlesex by the consideration of our Justices of our Superior Court at Middlesex, aforesaid, on 19th day of July 2004 recovered Judgment against Logistics,Com, Inc., a Delaware corporation with a regular place of business in Burlington, in the County of Middlesex for the sum of Three Hundred Eleven Thousand Thirty Four Dollars and Forty Three Cents debt or damages and Three Hundred Sixty Four Dollars and Twenty Two Cents costs of suit, as to us appears of record, where execution remains to be done:

We command you therefore, that of the goods, chattels or land of the said judgment debtor within your precinct, you cause to be paid and satisfied unto the said judgment creditor, at the value thereof in money, with interest thereon in the sum of Thirteen Thousand Two Dollars and Seven Cents from day of the rendition of said Judgment to date of execution the aforesaid sums, being $324,400.72 in the whole, and thereof also to satisfy yourself for your own fees.

Hereof fail not, and make return of this writ with your doing thereon into the Clerk's office of said Court at Cambridge, within our County of Middlesex, and to make return of this writ within twenty years after the date of the said judgment, or within ten days after this writ has been satisfied or discharged.

Witness, Barbara J. Rouse, Esquire, Chief Justice of the Superior Court, at Cambridge, Massachusetts this 23rd day of November, 2004.

Deputy Assistant Clerk

RETURN TO:
John F Maher, Esquire
Counsel for the Town of Arlington
50 Pleasant Street
Arlington, MA 02476

**EXHIBIT F**

portion of the Purchase Price to the fixed assets contained in the Purchased Assets equal to the value of such fixed assets carried on the books of Seller in accordance with generally accepted accounting principles ("GAAP"), consistently applied, at the Closing, and (ii) allocates the remainder of the Purchase Price to intangible assets and goodwill in proportions to be determined by Buyer. Buyer and Seller may agree upon a different allocation of the Purchase Price than set forth above, in which case such different allocation shall be controlling. Buyer shall use its reasonable best efforts to deliver to Seller the final version of the Allocation on or prior to January 15, 2003, and such final version of the Allocation shall become a part of this Agreement for all purposes. Seller and Buyer agree to report, pursuant to Section 1060 of the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder (collectively, the "Code[7]"), if and when required, the Allocation of the Purchase Price, as adjusted, among the Purchased Assets in a manner entirely consistent with such Allocation in the preparation and filing of all Tax Returns (including IRS form 8594). Neither Seller nor Buyer will take any action that would call into question the bona fides of such Allocation.

ARTICLE III.
LIABILITIES AND OBLIGATIONS

3.1     Obligations Assumed. As part of the consideration for the Purchased Assets, and subject to Section 3.2, Buyer shall assume the following liabilities arid obligations of Seller (the "Assumed Obligations"), which Buyer shall pay, perform, or discharge when due in accordance with their terms, subject to any defenses or claimed offsets asserted in good faith against the obligee to whom such liabilities or obligations are owed:

(a)     all debts, liabilities and obligations that Buyer has assumed or agreed to assume pursuant to this Agreement

(b)     all of the debts, liabilities and obligations of Seller identified or provided for in the Financial Statements as set forth on Schedule 3.1(b);

(c)     all of the debts, liabilities and obligations of Seller, in accordance with the terms thereof under or with respect to the Contracts, including, without limitation, those arising in connection with any breach or violation or any Contract by Seller prior to Closing, but excluding any obligations or liabilities arising from or related to (i) the principal amount of the Sabre Note, (ii) the Stockholder Notes, (iii) the Lanigan Employment Agreement, (iv) the Agreement for Services dated April 25, 2002 (the "ICGC Agreement"), between Seller and ICG Commerce, Inc. ("ICOC") (except for the existing engagements thereunder for Novartis Pharmaceuticals entered into on August 8, 2002, Timkcn Steel entered into on August 8, 2002, and Dole entered into on October 21, 2002) and (v) any contracts or agreements listed on Schedule 3.1(c);

(d)     all of the debts, liabilities and obligations of Seller for inventory ordered by Seller in the ordinary course of business prior to the Closing Date and delivered to Buyer after the Closing Date;

(e)     all of the debts, liabilities and obligations of Seller which relate, to the Purchased Assets or the Business to the extent attributable to occurrences or circumstances arising following the Closing;

   (f) any sales or transfer Taxes that may be due from the sale of the Purchased Assets pursuant to this Agreement, and any recording fees imposed upon the transfer of the Purchased Assets hereunder and the filing of any instruments;

   (g) the following (and no other) liabilities and obligations with respect to employees of Seller hired by Buyer in accordance with in Section 6.1:

    (1) liabilities of Seller for wages or salary,

    (2) liabilities of Seller for bonuses or commissions,

    (3) liabilities of Seller for reasonable and customary severance costs (including without limitation as a result of this transaction), it being agreed that one week's pay per year of service, with a minimum payment of two weeks pay and a maximum of six weeks pay is reasonable and customary,

    (4) liabilities of Seller for workers' compensation, and

    (5) liabilities of Seller for sick pay and vacation accruals.

However, notwithstanding the foregoing, in no event shall any such liabilities be assumed by Buyer to the extent that such liabilities arise as a result of any claims by employees of Seller or any ERISA Affiliate (as defined in Section 4.8(a)(i) hereof) of Seller of age, sex, religious, disability, or other unlawful discrimination by Seller or any ERLSA Affiliate of Seller.

   (h) any liability or obligation (contingent or otherwise) of Seller arising out of any claim, litigation or proceeding either (i) threatened or pending on or before the Closing Date or (ii) threatened. or initiated after the Closing Date to the extent based on or caused by any act or omission occurring, or condition or circumstances existing, prior to the Closing Date, with respect to the Purchased Assets, the Assumed Obligations or the Business;

   (i) any liability for product sold or manufactured by Seller or any service provided by Seller prior to the Closing in connection with the Business, including all product liability and warranty claims and product returns with respect thereto; and

   (j) all accrued interest on the Sabre Note from September 30, 2002 until the Closing, which accrued interest Buyer shall to pay to Sabre at the Closing.

  3.2 <u>Liabilities and Obligations <u>Not</u> Assumed</u>.

   3.2.1. <u>Generally</u>. Other than as specifically listed in Section 3.1 above, Buyer shall assume no liability or obligation whatsoever of Seller.

   3.2.2 <u>Specifically</u>. Furthermore, except as specifically listed in Section 3.1 above, Buyer expressly disclaims the assumption of, and shall not assume, any liability of any type whatsoever of Seller or in connection with any of Seller's assets or business operations including any liability of Seller that becomes a Liability of Buyer under any bulk transfer law of any jurisdiction, under any common law doctrine of de facto merger or successor liability, or

7

otherwise by operation of law, including without limitation the following (the "Excluded *Obligations"):*

(a)   <u>Taxes</u>. Except as provided in Sections 6.5 and 6.10, any and all tax liabilities accruing on or before the Closing Date in connection with the Business, any Purchased Asset, the Excluded Assets or othetwise, and any and all tax liabilities accruing on or after the Closing Date in connection with the ownership, operation or disposition of any Excluded Assets;

(b)   <u>Environmental</u>. Any and all liabilities of Seller arising at or before Closing from any noncompliance with any Environmental Law (as defined in Section 4.11), and any and all liabilities of Seller in connection with any claim by any person, entity or agency (a "Person") claiming to have suffered any environmental damage or harm of any type, including any actual or alleged damage or harm to groundwater, surface water, well water, ground, soil, or the atmosphere, or otherwise;

(c)   <u>Personnel Related</u>. Any and a]! employment or personnel-related liabilities not specifically assumed under Sections 3.1 or 6.1 of this Agreement

(d)   <u>Payables and Debt</u>. Any account payable, indebtedness, letter of credit, guaranty, note or obligation of Seller other than the obligations specifically assumed under Section 3.1; or

(e)   <u>Litigation</u>. Any liability or obligation (contingent or otherwise) of Seller arising out of any claim, litigation or proceeding with respect to the Excluded Assets.

ARTICLE IV.
REPRESENTATIONS AND WARRANTIES OF SELLER

As of the date of this Agreement, Seller represents and warrants to Buyer the following:

4.1   <u>Organization and Qualification</u>.

(a)   Seller has been duly organized and is validly existing and in good standing under the laws of Delaware and has the requisite corporate power and authority to own, lease and operate its properties and to cany on its business as it is now being conducted. Seller is duly qualified or licensed to do business, and is in good standing, in each jurisdiction where the character of the properties owned, leased or operated by it or the nature of its business makes such quaii.flcation or licensing necessary, except for such failures to be so qualified or licensed and in good standing that could not reasonably be expected to have, individually or in thó aggregate, a Material Adverse Effect. For purposes of this Agreement, "<u>Material Adverse Effect</u>" means a material adverse effect on the financial condition or results of operations of the Business, taken as a whole, other than with. respect to any adverse effects which directly or indirectly result from general economic conditions affecting the Business or the industry in which the Business competes. Seller may, at its option, include in the Schedules to this Agreement or elsewhere, items which would not have a Material Adverse Effect within the meaning of the previous sentence in order to avoid miswderstanding, and such inclusion shall not be deemed to be an acknowledgment by Seller that such items would have a Material Adverse Effect.

*8*