UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TERESA ROSALES,                )
    Plaintiff                )
                               )
V.                             )     CIVIL ACTION NO. 05-11442 PBS
                               )
MANHATTAN ASSOCIATES, INC.,    )
    Defendant               )

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Teresa Rosales ("Rosales") hereby submits this Memorandum in Support of her Motion for Summary Judgment filed pursuant to F.R.C.P. 56. Rosales seeks the entry of Summary Judgment in her favor establishing liability of Manhattan Associates, Inc. ("Manhattan"). Rosales is entitled as a matter of law to an entry of Judgment against Manhattan. The clear and unequivocal terms of the Asset Purchase Agreement by which Manhattan acquired Logistics.com, Inc. ("Logistics") require that Manhattan assume the very kind of liability that Rosales was successful in establishing by a court judgment against Logistics.

### STATEMENT OF UNDISPUTED FACTS

1.    On or about March 7, 2002 counsel for the plaintiff Rosales wrote a letter, which was sent by certified mail, to John Lanigan, Chief Executive Officer of Logistics.com, Inc., making a claim on behalf of Rosales against Logistics.com, Inc., based upon a theory of promissory estoppel.[1] Subsequent thereto counsel for Rosales had various discussions and correspondence with attorneys from the law firm of Bingham

---

[1] Exhibit A attached.

McCutchen, purportedly representing Logistics.com, Inc.  See Affidavit of Counsel attached.[2]

2.     On or about December 1, 2003, Rosales brought an action against Logistics.com, Inc., in the Middlesex Superior Court under a theory of promissory estoppel or detrimental reliance.[3]

3.     On July 14, 2004, the Middlesex Superior Court, Locke, J., presiding made the following findings:

> "1.  Teresa Rosales relying upon an offer of employment from the defendant terminated her employment with her former employer on February 4, 2002.  Her date of employment with the defendant was to be February 19, 2002.
>
> 2.  The defendant rescinded this offer on February 13, 2002.
>
> 3.  Despite repeated attempts to find new employment the plaintiff, Teresa Rosales has been unable to do so.
>
> 4.  Her salary at the defendant was to be $108,333.42.
>
> 5.  She was to receive an annual bonus of $12,120.00.
>
> 6.  Her annual compensation, therefore, was to be $120,453.42.
>
> 7.  Her per diem, therefore, was to be $330.00.
>
> 8.  There have been 876 days that have elapsed from the date she was to start employment, February 19, 2002 until today July 14, 2004.
>
> 9.  Her damages before interest is, therefore, $289,080.00."[4]

4.     An Execution issued on said Judgment on July 23, 2004 in the amount of

---

[2]  Exhibit B attached.

[3]  Exhibit C, Plaintiff's Complaint, Rosales v. Logistics.com attached.

[4]  See Exhibit D attached.

$324, 400.72.[5]

5. On December 13, 2002, Manhattan Associates and Logistics.com entered into an Asset Purchase Agreement whereby Manhattan purchased certain assets and assumed certain obligations of Logistics.com. (See Attachment A to Roberts' Affidavit to Defendant Manhattan's Memorandum of Law in Support of Defendant's Motion for Summary Judgment).

6.. In Article III Liabilities and Obligations of the Asset Purchase Agreement[6] the following is provided:

> "3.1  As part of the consideration for the purchased assets, and subject to Section 3.2, buyer shall assume the following liabilities and obligations of seller (assumed obligations), which buyer will pay, perform or discharge when due in accordance with their terms, subject to any defenses or claimed offsets asserted in good faith against the obligee to whom such liabilities or obligations are owed:…
> (c) all of the debts, liabilities and obligations of seller, in accordance with the terms thereof, contract or with respect to the contracts, including, without limitation, those arising in connection with any breach or violation of any contract by Seller prior to closing…
> (h) any liability or obligation (contingent or otherwise) of Seller arising out of any claim, litigation or proceeding (i) threatened or pending on or before the closing date…."

---

[5]  See Complaint of <u>Rosales v. Manhattan Associates, Inc.</u>, Paragraph 4 and copy of Execution at Exhibit E hereto.

[6]  See Exhibit F, pages 6 and 7 of said Agreement attached.

7.      Counsel for Rosales placed Manhattan on notice of the claim by means of a letter to its President and Chief Executive Officer, Richard M. Haddrill, dated September 26, 2003.[7]

8.      Rosales brought this present action on or about June 16, 2005 against Manhattan asserting that she detrimentally relied upon representations made by Logistics.com and having placed Logistics.com on notice of same.  She made claim therefore prior to the closing date of December 13, 2002 of the Asset Purchase Agreement between Manhattan Associates and Logistics.com, whereby Manhattan assumed said obligations.[8]

## ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Mendez v. Banco Popular de Puerto Rico, 900 F.2d 46, 48 (lst. Cir. 1990).

### B.    The Asset Purchase Agreement Terms

Here there are no issues of material fact.  Prior to the acquisition of Logistics by Manhattan, Logistics was place on notice that there was a claim and threatened lawsuit against it by means of a letter from counsel.  Article 3(c) places the burden on Manhattan to assume any obligations of the Seller, Logistics, for breaches of any contracts. Promissory estoppel certainly sounds in contract and is contemplated by this provision. Article 3(h) requires Manhattan to assume any "claims, litigation, or proceeding either

---

[7] See Exhibit G and Affidavit of Counsel Exhibit B attached.

[8] See Complaint, Rosales v. Manhattan Associates.

(i) threatened or pending on or before the closing date…". Certainly one can safely assume that due diligence would have revealed this claim to Manhattan. Logistics and Manhattan took great pains to exclude many liabilities and obligations and to include others. See generally Article 2 and Article 3 of the Asset Purchase Agreement, and in particular, Article 3.1(c) relating to certain taxes and environmental liabilities.[9] If they had intended to exclude Rosales' claim, they clearly could have easily done so. The plain and simple fact of the matter is that they did not and cannot now claim relief from such decision.

For the above-stated reasons the Plaintiff Rosales is entitled to summary judgment as a matter of law.

Respectfully submitted,

TERESA ROSALES

By her attorney,

/s/   John F. Maher
John F. Maher
BBO #314100
50 Pleasant Street
Arlington, MA   02476
Tel. (781) 641-4889
Fax  (781) 316-3159

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Heidsha Sheldon, Esquire, attorney for defendant, Manhattan Associates, Inc., by mail on August 17, 2005

/s/ John F. Maher
John F. Maher
BBO # 314100
50 Pleasant Street
Arlington, MA   02476

---

[9]   See Exhibit F.

(781) 641-4889

6

<u>EXHIBIT A</u>

# *John F. Maher*
### *Attorney at Law*

50 Pleasant Street

Arlington, Massachusetts 02476

Telephone (781) 641-4889

Fax (781) 314-3159

March 7, 2002

Mr. John Lanigan
Chief Executive Officer
Logistics.com, Inc.
23 Third Avenue
Burlington, MA 01803

RE:    <u>Teresa Rosales</u>

Dear Sir/Madam:

      The undersigned represents Ms. Teresa Rosales of Belmont, Massachusetts, in a claim against your company based upon the legal theory of promissory estoppel. As you may know, Ms. Rosales interviewed with your company on January 24th as a systems engineer. On January 26th she received from Pervinder Johar an oral offer followed by a written offer dated January 28th, which was received on January 30th. There were further communications between my client and Mr. Johar including telephone calls and e-mail, the substance of which makes clear that Logistics.com was holding the position open pending her decision on another job offer and the checking of references. The Director of Development, Michael DiBlasio, exchanged e-mail with my client around February 4th in which he advised that the references had checked out. My client advised him that she would accept the offer on that date. There was a subsequent exchange of e-mail confirming that February 19th was to be my client's starting date of employment. Based upon this, she resigned from her former position with WebDialogs, her previous employer. On February 13th she received a phone call from Logistics rescinding the job offer. Ms. Jennifer Darminio confirmed this rescission by a letter dated February 13, 2002. This letter stated that: "it is especially unfortunate that you terminated your employment with your previous employer, WebDialogs, in order to start employment with us on February 19, 2002. Please accept our apologies."

      Basic contract law provides that when an individual relies on a promise MADE by one party to a contract and the other party reneges on its obligations under the contract, then the latter is liable for all reasonable damages as a result of this breach. See <u>Roonev v. Paul D. Osborne Desk Company. Inc.</u>, 645 NE.2nd 50 (1995). This tenant of law exists notwithstanding the fact that my client's employment was to be of an at-will nature. She is actively seeking employment

at this time, but market conditions are such that it is unlikely that she will be able to secure comparable employment in the near future. She is entitled to be made whole for all loss of compensation as a result of your company's breach.

      Before putting this matter in suit, my client has directed me to attempt first to amicably resolve this matter short of litigation. I would hope to hear from you or your legal representative in
Mr. John Lanigan
Chief Executive Officer
Logistics.com, Inc.
Page 2
March 7, 2002


furtherance thereof within a reasonable period of time.   If I do not hear from you, then I shall proceed accordingly.

      Thank you for your kind attention to this matter.


                  Very truly yours,


                  /s/ John F. Maher
                  John F. Maher


JFM:mf
CERTIFIED MAIL
RETURN RECEIPT REQUESTED
No. 7099 3400 0016 4229 0118
cc:    Teresa Rosales

Case 1:05-cv-11442-PBS    Document 22-3    Filed 09/21/2005    Page 3 of 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERESA ROSALES,<br>    Plaintiff<br><br>VS.<br><br>MANHATTAN ASSOCIATES, INC.<br>    Defendant | )<br>)<br>)<br>)   CIVIL ACTION NO. 05-11441 PBS<br>)<br>)<br>) |

**<u>AFFIDAVIT</u>**

I, John F. Maher, under oath depose and say as follows**:**

1.  I am an attorney and counsel of record for the plaintiff, Teresa Rosales, in the above-captioned action pending in this Court.

2.  I prepared and sent by certified mail, return receipt requested, a letter dated March 7, 2002 addressed to John Lanigan, Chief Executive Officer of Logistics.com, Inc., a copy of which is attached as Exhibit A**.**

3.  I received back the receipt showing the signature of an individual who, I believe upon information and belief, is an employee of Logistics.com, Inc., showing receipt of said letter on March 8, 2002.

4.  I had various conversations with counsel at Bingham McCutchen concerning this matter on various dates in 2002 before December 12, 2002. They led me to believe that they represented the interests of Logistics.com, Inc.

5.  I prepared and mailed a letter dated September 26, 2003 to Richard Haddrill, President and Chief Executive Officer of Manhattan Associates, Inc., a copy of which is at Exhibit G.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS TWENTY-FIRST DAY OF SEPTEMBER, 2005.

/s/ John F. Maher
John F**.** Maher
BBO #314100
50 Pleasant Street
Arlington, MA 02476
Tel. (781) 641-4889
Fax. (781) 316-3159

**EXHIBIT C**

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Middlesex, ss.

| | |
|---|---|
| TERESA ROSALES,          )  | |
|    Plaintiff                      ) | |
|                               )  | COMPLAINT |
| vs.                                      ) | AND JURY CLAIM |
|                               ) | |
| LOGISTICS.COM, 1NC.,       ) | |
|    Defendant                   ) | |

Now comes the plaintiff Teresa Rosales in the above captioned matter and says that:

(Parties)

1. She is a resident of 42 Watson Road, Belmont, in the County of Middlesex Commonwealth of Massachusetts.

2. The defendant Logistics.Com Inc. is a Delaware corporation with a regular place of business at 23 Third Avenue, in the Town of Burlington, County of Middlesex.

3. According to papers on file at the Office of the Secretary of State of the Commonwealth said defendant's resident agent is Laurence Peters, 38 Newbury Street, floor, Boston, Massachuseits 02116.

(Factual Allegations)

4. On January 28, 2002 the plaintiff received a formal written offer of employment from the defendant which she accepted by signing and returning to the defendant.

5. Relying on this offer and acceptance she terminated her employment with her then current employer on or about February 4, 2002.

6. On February 13, 2002 she received a phone call from personnel at the defendant rescinding the offer of employment. The rescission was confirmed by a letter dated February 13, 2002 which contained the following statement, "it is especially unfortunate that you terminated your employment with your previous employer, WebDialogs, in order to start employment with us on February 19, 2002. Please accept our apologies."

7. The plaintiff despite intensive search has been unable to secure successor employment.

### Count I (Promissory Estoppel)

8. There was an unambiguous promise of employment communicated to the employee from the employer.
9. The plaintiff reasonably relied on the promise.
10. The reliance was expected and foreseeable by the employer.
11. The reliance was to the plaintiff's detriment.

Wherefore the plaintiff demands judgment against the defendant for the damages incurred by such reliance.

**PLAINTIFF CLAIMS** TRIAL **BY JURY**

    Teresa Rosales
    By her attorney,


    John F. Maher
    50 Pleasant Street
    Arlington, MA 02476
    781-641-4889
    BBO# 314100

**EXHIBIT D**

COMMONWEALTH OF MASSSACHJSETTS

| | |
|---|---|
| MIDDLESEX, **SS** | SUPERIOR COURT<br>CIVIL ACTION<br>NO. 03-04886-J |

TERESA ROSALES, )
    Plaintiff )
V. )     **FINDINGS** OF THE COURT
    )
LOGISTICS.COM, INC., )
    Defendant )

The Court having heard evidence and the testimony of witnesses hereby makes the following findings:

1. Teresa Rosales relying upon an offer of employment from the defendant terminated her employment with her former employer on February 4, 2002. Her date of employment with the defendant was to be February 19, 2002.

2. The defendant rescinded this offer on February 13, 2002.

3. Despite repeated attempts to find new employment the plaintiff, Teresa Rosales has been unable to do so.

4. Her salary at the defendant was to be $108,333.42.

5. She was to receive an annual bonus of $12,120.00.

6. Her annual compensation, therefore, was to be $120,453.42.

7. Her per diem, therefore, was to be $330.00.

8. There have been 876 days that have elapsed from the date she was to start employment, February 19, 2002 until today July 14, 2004.

9. Her damages before interest is, therefore, $289,080.00.

X10. Interest at the rate of 12% per annum added to this amount is $62,324.

X11. The total damages, therefore, due the plaintiff is $351.404.

It is so ordered.

By the Court,

/s/ Jeffrey A. Locke
 Presiding

EXHIBIT E

Commonwealth of Massachusetts
County of Middlesex
The Superior Court
EXECUTION

CIVIL DOCKET# MICV2003-04886

Teresa Rosales v Logistics,Com, Inc.

To the Sheriffs of our Several Counties or their Deputies, GREETING:

|  |  |
|---|---|
| DAMAGES: | $311,034.43 |
| COSTS: | $364.22 |
| POST JUD/INT: | $13,002.07 |
| TOTAL: | $324,400.72 |

WHEREAS Teresa Rosales, a resident in Belmont, in the County of Middlesex by the consideration of our Justices of our Superior Court at Middlesex, aforesaid, on 19th day of July 2004 recovered Judgment against Logistics,Com, Inc., a Delaware corporation with a regular place of business in Burlington, in the County of Middlesex for the sum of Three Hundred Eleven Thousand Thirty Four Dollars and Forty Three Cents debt or damages and Three Hundred Sixty Four Dollars and Twenty Two Cents costs of suit, as to us appears of record, where execution remains to be done:

We command you therefore, that of the goods, chattels or land of the said judgment debtor within your precinct, you cause to be paid and satisfied unto the said judgment creditor, at the value thereof in money, with interest thereon in the sum of Thirteen Thousand Two Dollars and Seven Cents from day of the rendition of said Judgment to date of execution the aforesaid sums, being $324,400.72 in the whole, and thereof also to satisfy yourself for your own fees.

Hereof fail not, and make return of this writ with your doing thereon into the Clerk's office of said Court at Cambridge, within our County of Middlesex, and to make return of this writ within twenty years after the date of the said judgment, or within ten days after this writ has been satisfied or discharged.

Witness, Barbara J. Rouse, Esquire, Chief Justice of the Superior Court, at Cambridge, Massachusetts this 23rd day of November, 2004.

Deputy Assistant Clerk

RETURN TO:
John F Maher, Esquire
Counsel for the Town of Arlington
50 Pleasant Street
Arlington, MA 02476

# EXHIBIT F

portion of the Purchase Price to the fixed assets contained in the Purchased Assets equal to the value of such fixed assets carried on the books of Seller in accordance with generally accepted accounting principles ("GAAP"), consistently applied, at the Closing, and (ii) allocates the remainder of the Purchase Price to intangible assets and goodwill in proportions to be determined by Buyer. Buyer and Seller may agree upon a different allocation of the Purchase Price than set forth above, in which case such different allocation shall be controlling. Buyer shall use its reasonable best efforts to deliver to Seller the final version of the Allocation on or prior to January 15, 2003, and such final version of the Allocation shall become a part of this Agreement for all purposes. Seller and Buyer agree to report, pursuant to Section 1060 of the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder (collectively, the "Code[7]"), if and when required, the Allocation of the Purchase Price, as adjusted, among the Purchased Assets in a manner entirely consistent with such Allocation in the preparation and filing of all Tax Returns (including IRS form 8594). Neither Seller nor Buyer will take any action that would call into question the bona fides of such Allocation.

ARTICLE III.<br>
LIABILITIES AND OBLIGATIONS

3.1     Obligations Assumed. As part of the consideration for the Purchased Assets, and subject to Section 3.2, Buyer shall assume the following liabilities arid obligations of Seller (the "Assumed Obligations"), which Buyer shall pay, perform, or discharge when due in accordance with their terms, subject to any defenses or claimed offsets asserted in good faith against the obligee to whom such liabilities or obligations are owed:

(a)     all debts, liabilities and obligations that Buyer has assumed or agreed to assume pursuant to this Agreement

(b)     all of the debts, liabilities and obligations of Seller identified or provided for in the Financial Statements as set forth on Schedule 3.1(b);

(c)     all of the debts, liabilities and obligations of Seller, in accordance with the terms thereof under or with respect to the Contracts, including, without limitation, those arising in connection with any breach or violation or any Contract by Seller prior to Closing, but excluding any obligations or liabilities arising from or related to (i) the principal amount of the Sabre Note, (ii) the Stockholder Notes, (iii) the Lanigan Employment Agreement, (iv) the Agreement for Services dated April 25, 2002 (the "ICGC Agreement"), between Seller and ICG Commerce, Inc. ("ICOC") (except for the existing engagements thereunder for Novartis Pharmaceuticals entered into on August 8, 2002, Timkcn Steel entered into on August 8, 2002, and Dole entered into on October 21, 2002) and (v) any contracts or agreements listed on Schedule 3.1(c);

(d)     all of the debts, liabilities and obligations of Seller for inventory ordered by Seller in the ordinary course of business prior to the Closing Date and delivered to Buyer after the Closing Date;

(e)     all of the debts, liabilities and obligations of Seller which relate, to the Purchased Assets or the Business to the extent attributable to occurrences or circumstances arising following the Closing;

(f) any sales or transfer Taxes that may be due from the sale of the Purchased Assets pursuant to this Agreement, and any recording fees imposed upon the transfer of the Purchased Assets hereunder and the filing of any instruments;

(g) the following (and no other) liabilities and obligations with respect to employees of Seller hired by Buyer in accordance with in Section 6.1:

(1) liabilities of Seller for wages or salary,

(2) liabilities of Seller for bonuses or commissions,

(3) liabilities of Seller for reasonable and customary severance costs (including without limitation as a result of this transaction), it being agreed that one week's pay per year of service, with a minimum payment of two weeks pay and a maximum of six weeks pay is reasonable and customary,

(4) liabilities of Seller for workers' compensation, and

(5) liabilities of Seller for sick pay and vacation accruals.

However, notwithstanding the foregoing, in no event shall any such liabilities be assumed by Buyer to the extent that such liabilities arise as a result of any claims by employees of Seller or any ERISA Affiliate (as defined in Section 4.8(a)(i) hereof) of Seller of age, sex, religious, disability, or other unlawful discrimination by Seller or any ERLSA Affiliate of Seller.

(h) any liability or obligation (contingent or otherwise) of Seller arising out of any claim, litigation or proceeding either (i) threatened or pending on or before the Closing Date or (ii) threatened. or initiated after the Closing Date to the extent based on or caused by any act or omission occurring, or condition or circumstances existing, prior to the Closing Date, with respect to the Purchased Assets, the Assumed Obligations or the Business;

(i) any liability for product sold or manufactured by Seller or any service provided by Seller prior to the Closing in connection with the Business, including all product liability and warranty claims and product returns with respect thereto; and

(j) all accrued interest on the Sabre Note from September 30, 2002 until the Closing, which accrued interest Buyer shall to pay to Sabre at the Closing.

3.2 Liabilities and Obligations Not Assumed.

3.2.1. Generally. Other than as specifically listed in Section 3.1 above, Buyer shall assume no liability or obligation whatsoever of Seller.

3.2.2 Specifically. Furthermore, except as specifically listed in Section 3.1 above, Buyer expressly disclaims the assumption of, and shall not assume, any liability of any type whatsoever of Seller or in connection with any of Seller's assets or business operations including any liability of Seller that becomes a Liability of Buyer under any bulk transfer law of any jurisdiction, under any common law doctrine of de facto merger or successor liability, or

otherwise by operation of law, including without limitation the following (the "Excluded *Obligations")*:

    (a)    *Taxes*. Except as provided in Sections 6.5 and 6.10, any and all tax liabilities accruing on or before the Closing Date in connection with the Business, any Purchased Asset, the Excluded Assets or othetwise, and any and all tax liabilities accruing on or after the Closing Date in connection with the ownership, operation or disposition of any Excluded Assets;

    (b)    *Environmental*. Any and all liabilities of Seller arising at or before Closing from any noncompliance with any Environmental Law (as defined in Section 4.11), and any and all liabilities of Seller in connection with any claim by any person, entity or agency (a "*Person*") claiming to have suffered any environmental damage or harm of any type, including any actual or alleged damage or harm to groundwater, surface water, well water, ground, soil, or the atmosphere, or otherwise;

    (c)    *Personnel Related*. Any and a]! employment or personnel-related liabilities not specifically assumed under Sections 3.1 or 6.1 of this Agreement

    (d)    *Payables and Debt*. Any account payable, indebtedness, letter of credit, guaranty, note or obligation of Seller other than the obligations specifically assumed under Section 3.1; or

    (e)    *Litigation*. Any liability or obligation (contingent or otherwise) of Seller arising out of any claim, litigation or proceeding with respect to the Excluded Assets.

## ARTICLE IV.
## REPRESENTATIONS AND WARRANTIES OF SELLER

As of the date of this Agreement, Seller represents and warrants to Buyer the following:

    4.1    *Organization and Qualification*.

    (a)    Seller has been duly organized and is validly existing and in good standing under the laws of Delaware and has the requisite corporate power and authority to own, lease and operate its properties and to cany on its business as it is now being conducted. Seller is duly qualified or licensed to do business, and is in good standing, in each jurisdiction where the character of the properties owned, leased or operated by it or the nature of its business makes such quaii.flcation or licensing necessary, except for such failures to be so qualified or licensed and in good standing that could not reasonably be expected to have, individually or in thó aggregate, a Material Adverse Effect. For purposes of this Agreement, "*Material Adverse Effect*" means a material adverse effect on the financial condition or results of operations of the Business, taken as a whole, other than with. respect to any adverse effects which directly or indirectly result from general economic conditions affecting the Business or the industry in which the Business competes. Seller may, at its option, include in the Schedules to this Agreement or elsewhere, items which would not have a Material Adverse Effect within the meaning of the previous sentence in order to avoid miswderstanding, and such inclusion shall not be deemed to be an acknowledgment by Seller that such items would have a Material Adverse Effect.

# *John F. Maher*
   *Attorney at Law*

                                                          *50 Pleasant Street*
                                                  *Arlington, Massachusetts 02476*
                                                      *Telephone (781) 641-4889*
                                                        *Fax   (781) 316-3159*


September 26, 2003



Mr. Richard M. Haddrill
President and Chief Executive Officer
Manhattan Associates, Inc.
2300 Windy Ridge Pkwy., Suite 700
Atlanta, GA 30339

RE:     **Teresa Rosales**

Dear Sir:

      The undersigned represents Ms. Teresa Rosales in a claim against Logistics.com. A copy of the claim letter on my client's behalf was sent to Mr. John Lanigan, Chief Executive Officer of Logistics, on or about March 7, 2002 by certified mail, return receipt requested. The letter fairly presents the claim, which is one based upon promissory estoppel. The nexus of the claim is that my client left her former employment relying on the Logistics.com employment offer, and this offer was subsequently withdrawn. I have all the supporting documentation in my possession including but not limited to the mutually executed Offer of Employment dated February 13, 2002 and other supporting e-mails and so forth.

      Unfortunately, despite my client's vigorous and documented attempts to secure comparable employment, such efforts have been unavailing. Upon my advice it is now her present intention to institute litigation against Logistics.com for this contractual breach. Permit me to parenthetically note that this claim of promissory estoppel is valid notwithstanding the fact that my client was to be an employee-at-will at Logistics.com. Her claim is not an employment claim, per Se, but one of basic detrimental reliance, which finds its validity in basic contract law. My client's damages are increasing and are well over $100,000 at this time notwithstanding her good faith and documented attempts to mitigate same.

      I note from Article III of the Liability and Obligations Provisions of the Acquisition Agreement that you have retained liability for certain of Logistics' liabilities including under subsection (c) "those arising in connection with any breach or violation of any contract by seller prior to closing." I also note under subsection (f) that you have liability for "any claim either threatened on or before the closing date or threatened or initiated before the closing date to the

Mr. Richard M. Haddrill
President and Chief Executive Officer
Manhattan Associates, Inc.
Page 2
September 26, 2003

extent based on or caused by any action or omission or condition or circumstances existing prior to the closing date with respect to the purchase assets, the assumed obligations, or the **business**." (Emphasis supplied). Nothing in paragraph 3.2 of Article III negates this assumption including paragraph (c) thereof entitled personnel related. Assuming even for the sake of argument that this is personnel or employment related, it is not excluded since it has been specifically assumed by its own terms by virtue of being referred in Section 3.1 in both 3.1(c) and 3.1(h) as cited above.

     This letter is meant as a courtesy to advise you of the above-described circumstances, and my intention to institute litigation against Logistics.com to redress its contractual violation. If you would prefer to resolve the matter short of litigation, I would be amenable to discussing this matter at your convenience. My present intention would be to institute litigation against Logistics within the next several days. I would hope to hear from you with a view towards an amicable and quick resolution of this claim.

                                        Very truly yours,


                                        s/John F. Maher
                                        John F. Maher

JFM:mf
Enclosure
cc: Teresa Rosales